RAFKIN ESQ., PLLC
SETH A. RAFKIN, Cal Bar No. 199166
JENNIFER M. BOGUE, Cal Bar No. 259431
1201 Sussex Turnpike, Suite 102
Randolph, NJ 07869
Telephone:      973.891.3370
Facsimile:      973.920.9727
Email:           srafkin@rafkinesq.com
                 jbogue@rafkinesq.com

Attorneys for Plaintiff Karen Koski

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
NANCY E. PRITIKIN, Cal Bar No. 102392
SAMI HASAN, Cal Bar No. 272333
LUIS ARIAS, Cal Bar No. 317819
MARGARET SHEERIN, Cal Bar No. 346641
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:      415.434.9100
Facsimile:      415.434.3947
Email:           npritikin@sheppardmullin.com
                 shasan@sheppardmullin.com
                 larias@sheppardmullin.com
                 msheerin@sheppardmullin.com

Attorneys for Defendant BTIG, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA,

## SAN FRANCISCO DIVISION

| | |
|---|---|
| KAREN KOSKI,<br><br>                    Plaintiff,<br><br>          v.<br><br>BTIG, LLC, a Limited Liability Company,<br><br>                    Defendant. | Case No. 3:24-cv-06755-AGT<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Judge:    Hon. Alex G. Tse |

Counsel for Plaintiff Karen Koski ("Plaintiff") and Defendant BTIG, LLC ("Defendant") (collectively, the "Parties") submit this joint report and discovery plan pursuant to Federal Rule of Civil Procedure 26, Local Rule 16-9, and applicable standing orders.  The Parties held their Rule 26(f) conference on December 6, 2024.

**I.    JURISDICTION AND SERVICE**

The Parties agree that this Court has jurisdiction over Plaintiff's claims and the Parties.  All named defendants have been duly served.

**II.    FACTS**

A.    Plaintiff's Position

Plaintiff is an experienced investment banker and former Managing Director in the Investment Banking department of Defendant BTIG, LLC. Plaintiff's focus was on the health care industry, a position in which she achieved measurable success despite the hostile environs in which she worked.  Plaintiff generated in excess of $25 million in revenue for BTIG in just over four years.  She outperformed numerous of her male peers. As 2022 opened, BTIG offered Plaintiff a $300,000 retention bonus to ensure that she stayed at BTIG through at least 2024. BTIG's Chief Executive Officer, Scott Kovalik, personally rated Plaintiff as achieving expectations in a performance review from late July 2023.  Yet, less than two months later, Plaintiff was summarily fired.

Nothing had changed in terms of Plaintiff's performance. At the time she was fired, she was working on several lucrative live deals with signed mandates, including one she was about to close worth an estimated $12 million in revenue to BTIG.  The only thing that had changed was that Plaintiff had repeatedly complained about the harassing, discriminatory conduct of a male executive. Plaintiff had begun complaining about this male executive a few months earlier.  This man had repeatedly targeted women on the team, including Plaintiff, with harassing behavior.  He yelled at women on the phone and in meetings and would berate women over minor issues – issues on which he was often misinformed.

Plaintiff spoke directly to Kovalik, the CEO, to complain about this conduct.  She did so in late June of 2023.  BTIG did nothing in the way of an investigation.  Indeed, it did not even involve Human Resources.  Instead, Kovalik took it upon himself to tell the male executive that Plaintiff had complained

1    about him. Predictably, after that, his conduct only worsened toward Plaintiff. He began to ignore

2    Plaintiff other than instances in which he would insult, threaten or yell at her, often in team settings.

3        In September of 2023, this male executive went into another tirade on a team call, attacking another

4    woman on the team. The woman asked him to please stop telling him that he was attacking her. He was

5    so loud and aggressive that another woman, who was sitting in a separate office during the call

6    immediately came over to check on the woman attacked to ensure that she was okay. She went on to

7    describe that working with this male executive had come to feel as though she was in a domestic abuse

8    relationship. In response to these comments, Plaintiff pledged her full support in reporting the conduct

9    and encouraged her to go to Human Resources.

10       The next week both the woman who was attacked on the call and Plaintiff were fired. The male

11    executive remained employed at BTIG. None of this was surprising, as BTIG has a history and reputation

12    of poor treatment of women, and an unwritten rule that those who complain get fired.

13       This rank retaliation was not the only discriminatory conduct Plaintiff was subjected to at BTIG.

14    She had spent years berated and belittled by male colleagues in the research department at BTIG. The

15    treatment was so bad that she sought to work from home – away from them – as much as possible. She

16    was also woefully under-compensated compared to her male peer investment bankers. Her male

17    colleagues were paid higher salaries, and higher bonuses. Further, BTIG granted equity compensation to

18    male managing directors performing equal work to Plaintiff, but did not grant any equity to Plaintiff.

19    BTIG even reallocated compensation earned by Plaintiff on various deals to other male colleagues.

20    Accordingly, Plaintiff brings claims of gender discrimination, retaliation, and equal pay violations against

21    BTIG.

22       B.    Defendant's Position

23       This is an employment dispute in which Plaintiff, a former employee in Defendant's Investment

24    Banking department, alleges (1) that Defendant terminated her employment for complaining to Defendant

25    and its then Chief Executive Officer (CEO) about discriminatory and harassing conduct by a male

26    colleague, (2) that Defendant discriminated against her based on her gender, and (3) that she was paid less

27    in salary, bonus compensation and equity pursuant to the Equal Pay Act.

28

1    Plaintiff had two terms of employment with BTIG.  First, as a research analyst in BTIG's Research

2    Department, from December 2013 to June 2017, when she resigned.  Second, as an investment banker in

3    BTIG's Investment Banking Department, from May 2019 to September 2023.  During her second term of

4    employment, Plaintiff along with several male employees in the same Investment Banking Department

5    were terminated in September 2023 as part of a company-wide economic reduction-in-force (RIF)

6    necessitated by financial, economic, and market conditions.  The September 2023 RIF was the second of

7    two RIFs BTIG conducted in 2023.

8    Employees, including Plaintiff, were selected for the RIFs based on neutral and objective criteria,

9    including performance and projected future performance based on the state of the market.  Plaintiff was an

10   underperforming employee, whose business generation and prospects had significantly decreased.  She

11   was often tardy to or absent from internal and external meetings, she did not come into the office despite

12   BTIG's return-to-work policies post-Covid, and she made inappropriate remarks during meetings and

13   client events.

14   Despite Defendant terminating Plaintiff for legitimate, non-retaliatory and non-discriminatory

15   business reasons, i.e., due to a RIF, Plaintiff nonetheless filed this action against Defendant, alleging (1)

16   retaliation; (2) gender discrimination; and (3) Equal Pay Act violations.

17   There is no evidence corroborating any of Plaintiff's allegations, and Defendant denies them in

18   their entirety.  Defendant denies, among other things, that: (1) Plaintiff made any complaints of

19   discriminatory and/or harassing conduct, by a male colleague or anyone else, to Defendant and/or to

20   Defendant's then CEO; (2) Plaintiff was terminated or retaliated against for reporting discriminatory or

21   harassing conduct;  (3) Plaintiff was discriminated against because of her gender; (4) Plaintiff was

22   undercompensated pursuant to the Equal Pay Act; and, (5) Plaintiff was an "unequivocal success" and

23   personally rated as achieving expectations from Defendant's then CEO.

24   **III.   LEGAL ISSUES**

25   The legal issues in this matter include whether Plaintiff was terminated or retaliated against for

26   reporting discriminatory or harassing conduct; whether Plaintiff was discriminated against because of her

27   gender; whether Plaintiff was undercompensated pursuant to the Equal Pay Act; whether Plaintiff

28

SMRH:4922-0803-4051.9

1   suffered and is entitled to any damages in the event she prevails on any of her claims, and whether

2   Defendant's affirmative defenses to these claims can be established.

3   **IV.   MOTIONS**

4        There are no prior or pending motions.  Defendant anticipates filing a motion for summary

5   judgment or adjudication of issues.  No other motions are anticipated at this time.

6   **V.   AMENDMENT OF PLEADINGS**

7        The Parties do not intend to amend the pleadings at this time.  The Parties propose a deadline of

8   January 3, 2025, for amending the pleadings.

9   **VI.   EVIDENCE PRESERVATION**

10       The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored

11   Information ("ESI Guidelines") and confirm that they have met and conferred regarding reasonable and

12   proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action,

13   including related to email and phone records.

14   **VII.   DISCLOSURES**

15       The Parties have met and conferred pursuant to FRCP 26(f) and intend to make their initial

16   disclosures on or by January 17, 2025.  The Parties have considered the Court's General Order No. 71

17   (Initial Protocols for Employment Cases Alleging Adverse Action) and concluded it does not apply.

18   **VIII.   DISCOVERY**

19       No discovery has been taken to date.  The Parties have agreed to exchange initial disclosures on or

20   by January 17, 2025.

21       The Parties do not presently anticipate any changes or modifications of the discovery rules.  The

22   Parties agreed that BTIG would take Plaintiff's deposition first, in or around Spring 2025, after the

23   Parties engage in initial written discovery.  Defendant's counsel will meet and confer with Plaintiff's

24   counsel about dates for Plaintiff's deposition.

25       The Parties have agreed to enter into a Stipulated Protective Order modeled after the Northern

26   District of California's model protective order for standard litigation.

27       The Parties do not have or anticipate any discovery disputes at this time.

28

1   **IX.     RELATED CASES**

2       The Parties are unaware of any related cases.

3   **X.     RELIEF**

4       Plaintiff is seeking economic, noneconomic, punitive, and liquidated damages. Plaintiff also seeks

5   prejudgment interest and her costs and reasonable attorney fees.

6       Defendant denies liability and denies that Plaintiff is entitled to recover any damages or relief

7   whatsoever.  Defendant further contends that Plaintiff is not entitled to recover any punitive damages,

8   liquidated damages, and attorney's fees or costs.

9   **XI.    SETTLEMENT AND ADR**

10      The Parties engaged in private mediation prior to the filing of this lawsuit but were unsuccessful in

11  reaching any agreement or settlement.  Although the Parties do not believe that the ADR options are

12  appropriate at this time, they have agreed to revisit the potential for ADR, including private mediation

13  and/or a settlement conference, after they have had an opportunity to conduct written discovery and

14  depositions.

15  **XII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

16      Defendants have consented to have a United States Magistrate Judge conduct all further

17  proceedings, including trial and entry of judgment.

18  **XIII.  OTHER REFERENCES**

19      The Parties do not believe that this case is suitable for reference to binding arbitration or a special

20  master.

21  **XIV.   NARROWING OF ISSUES**

22      Presently, no issues can be narrowed by agreement.  Following completion of initial disclosures

23  and subsequent discovery, the Parties will meet and confer to discuss ways to expedite the presentation of

24  evidence at trial.

25  **XV.    EXPEDITED TRIAL PROCEDURE**

26      The Parties do not believe this is the type of case that can be handled under the Expedited Trial

27  Procedure of General Order 64, Attachment A.

28

**XVI.    <u>SCHEDULING</u>**

A.    Plaintiff's Position

Plaintiff filed her complaint in September of 2024. During the Rule 26f conference, Plaintiff's counsel advised Defendant's counsel we preferred at trial date in late 2025. At Defense counsel's behest, we agreed to a trial date in early 2026. Thus, we ask the Court to set a trial date no later than early March of 2026.

In our view, there is no reason why the parties cannot complete discovery by the end of 2025, putting a trial date in early March of 2026. This is a single plaintiff discrimination case and, as noted above, the parties do not anticipate any significant discovery issues. Further, the parties expect depositions to start by April 2025, leaving ample time to complete discovery by the end of the year.

Plaintiff's counsel will be out of the country April 11 – April 19, 2026.

Plaintiff's counsel proposes the following schedule:

| Event | Proposed Deadline |
|---|---|
| Last Day to Amend Pleadings and Add Parties | January 3, 2025 |
| Expert Witness Disclosure Cut-Off | November 3, 206 (120 days before trial) |
| Rebuttal Expert Designation | December 3, 2025 (90 days before trial) |
| Discovery Cut-Off | January 2, 2026 (60 days before trial) |
| Last Day to Hear Dispositive Motions | January 30, 2026 (31 days before trial) |
| Final Pre-Trial Conference | February 16, 2026 (14 days before trial) |
| Trial | March 2, 2026 |

B.    Defendant's Position

The Parties have agreed to a trial date in 2026.  Defendant is unavailable for trial from March 23, 2026, to April 3, 2026.

Any trial date prior to March 23, 2026, will not provide sufficient time prior to trial for Defendant to adequately complete discovery and file dispositive motions, including a motion for summary judgment.  While Defendant strongly denies Plaintiff's allegations in their entirety, and that she is entitled to any compensatory damages, Plaintiff has placed facts at issue in this litigation that may require extensive discovery, including expert discovery, related to Plaintiff's alleged compensatory damages, such as for equity compensation, bonus compensation, and compensation for deals.  Further, it

is unclear at this time how many depositions the Parties will complete and the timing for such

depositions due to the witnesses' geographic locations.  Defendant expects that witnesses may be

located across the country, either in California or New York, and Defendant further understands that

Plaintiff currently resides in Florida.  Plaintiff has rejected Defendant's proposed trial dates, and the

Court should reject any attempts by Plaintiff to deprive Defendant of its due process rights.

Accordingly, Defendant requests a scheduling timeline as follows:

| Event | Proposed Deadline |
|---|---|
| Last Day to Amend Pleadings and Add Parties | January 3, 2025 |
| Expert Witness Disclosure Cut-Off | 120 days before trial |
| Rebuttal Expert Designation | 90 days before trial |
| Discovery Cut-Off | 60 days before trial |
| Last Day to Hear Dispositive Motions | 30 days before trial |
| Final Pre-Trial Conference | 14 days before trial |
| Trial | Between April 20, 2026 and May 25, 2026 |

## XVII.  TRIAL

Plaintiff has demanded a jury trial.  The Parties agree that it is premature to estimate the length of

trial at this point in the litigation and agree to meet and confer about this topic as the case progresses and

gets closer to a trial date.

## XVIII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

On December 2, 2024, Defendant filed a Certification of Interested Entities or Persons, in

compliance with Civil Local Rule 3-15. On December 19, Plaintiff filed a Certification of Interested

Entities or Persons, in compliance with Civil Local Rule 3-15.

## XIX.  PROFESSIONAL CONDUCT

Both Parties have reviewed the Guidelines for Professional Conduct for the Northern District of

California.

## XX.  OTHER

The Parties have not identified any matters that may facilitate the just, speedy, and inexpensive

disposition of this action at this time.

1

2      Dated:  December 27, 2024         By: _____
                                                        */s/ Jennifer M. Bogue*
3                                                     SETH A. RAFKIN
                                                   JENNIFER M. BOGUE
4
5                                             Attorneys for Plaintiff Karen Koski
6
7                                 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
8
9
10     Dated:  December 27, 2024         By _____
                                                        */s/ Luis Arias*
11                                                   NANCY E. PRITIKIN
                                                       SAMI HASAN
12                                                      LUIS ARIAS
                                                   MARGARET SHEERIN
13
14                                           Attorneys for Defendant BTIG, LLC
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **ATTESTATION OF CONCURRENCE**

2          Pursuant to the Northern District Local Rule 5-1, I hereby attest that concurrence in the filing of

3   this document has been obtained from each of the other signatories.

4          I declare under penalty of perjury under the laws of the United States of America that the

5   foregoing declaration is true and correct to the best of my personal knowledge.

6          Executed this 27th day of December 2024, in Austin, Texas.

7

8                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

9

10                             By: _____/s/ Luis Arias_____

11                                            LUIS ARIAS

12                             Attorneys for Defendant BTIG, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CASE MANAGEMENT [PROPOSED] ORDER

2     The above JOINT CASE MANAGEMENT STATEMENT and [PROPOSED] ORDER is

3  approved as the Case Management Order for this case and all parties shall comply with its provisions. [In

4  addition, the Court makes the further orders stated below:]

5     **IT IS SO ORDERED.**

6

7  Dated:

8                                        _____
                                         UNITED STATES MAGISTRATE JUDGE
9                                              JUDGE ALEX G. TSE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4922-0803-4051.9